to attend before the referee was excusable. This being so, the appellant ought to be put·in precisely the same position that she would have been had her attorney attended, but in doing this it would be unfair to impose the expense which was incurred, after his failure to attend, upon the other parties. These expenses, so far as appears, were incurred in good faith, and ought, therefore, to be paid by her. By requiring the appellant to pay this expense, all of the parties are placed in precisely the same position which they occupied before the default took place.

If the Solomon mortgage is invalid, either in whole or in part, then the appellant ought to be afforded an opportunity to show that fact; and there does not seem to be any good reason why, under the facts presented, she should be required to give an undertaking to pay all of the damages sustained, including expenses incurred by the other parties to the reference. Not only this, but it is difficult to see how she is given such an opportunity under the order appealed from, if the "report of the referee heretofore filed * * * shall stand as confirmed and conclusive."

So much of the order as is appealed from, therefore, is modified as indicated in this opinion, and, as thus modified, affirmed, without costs to either party. All concur.

(101 App. Div. 12)

SCHMITT v. MICHIGAN MUT. LIFE INS. CO.

(Supreme Court, Appellate Division, Second Department. January 6, 1905.)

1. LIFE INSURANCE—APPLICATION—WARRANTY—BREACH—JURY QUESTION.
　　In an action on a life insurance policy it appeared that the insured answered in the negative the question in the application whether he had "chronic or habitual cough or hoarseness, spitting or coughing of blood, asthma or shortness of breath, or any chest or lung disease." The contract made the answer a warranty. By its bill of particulars the defendant limited the alleged breach of warranty to consumption, tuberculosis, or phthisis. Held, that it was a question for the jury whether evidence that the applicant had suffered from habitual cough or hoarseness, and from spitting or coughing of blood, and from shortness of breath, established any disease so serious as to have any bearing on the life of the insured.

2. SAME.
　　In an action on a life insurance policy, evidence examined, and whether there was a breach of warranty in the statement in the application concerning the health of a brother of the appellant held a question for the jury.

Appeal from Trial Term, Westchester County.

Action by Rose Schmitt against the Michigan Mutual Life Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

John N. Blair, for appellant.
Thomas Abbott McKennell, for respondent.

WILLARD BARTLETT, J. The defendant contends that it ought to have prevailed upon the trial of this action, because it es-

tablished four breaches of warranty contained in the application for insurance concerning the health of the applicant, and one breach of warranty concerning the family record of the insured. The application contained the following question:

"Have you had any of the following diseases? Of each illness, state date, number of attacks, duration, severity, complications and results: * * * (4) Chronic or habitual cough or hoarseness, spitting or coughing of blood, asthma or shortness of breath, or any chest or lung disease? (Yes or No)."

To this question the applicant answered "No." The case was submitted to the jury on the assumption that the negative answer to this question constituted a material warranty, the breach of which would avoid the policy; and the defendant insists that the proof established such breach, in that it showed that the insured had suffered from chronic or habitual cough and hoarseness, and from spitting or coughing of blood, and from shortness of breath, and from a chest or lung disease. So far as the chest or lung disease was concerned, the defendant, by its bill of particulars, had limited the alleged breach to "consumption, tuberculosis, or phthisis." The proposition that the insured had suffered from the disease thus specified in the bill of particulars prior to his application for insurance was not sustained by the evidence. Nor were the other alleged breaches of warranty as to his own health so conclusively made out as to require the jury to find in the defendant's favor on the issues which they presented. "In construing a policy of life insurance it must be generally true that, before any temporary ailment can be called a disease, it must be such as to indicate a vice in the constitution, or be so serious as to have some bearing upon general health and the continuance of life, or such as, according to common understanding, would be called a disease." Cushman v. U. S. Life Ins. Co., 70 N. Y. 72, and cases there cited. It is to be observed that the warranties under discussion were not to the effect that the applicant had never suffered temporarily from habitual cough or hoarseness, or from the spitting or coughing of blood, or from shortness of breath, but that he had never suffered from "diseases" of which these were the manifestations. The case in this respect is like Dreier v. Continental Life Ins. Co. (C. C.) 24 Fed. 670, where the alleged warranty consisted of a negative answer to the question whether the parties "had any of the following complaints," and then specified "spitting or raising of blood" as one of them. There the Circuit Court of the United States held that there was no warranty "that the insured never had spitting or raising of blood, but only that he had not had the complaint of spitting or raising blood; equivalent to a warranty that he had not had blood-spitting in such form as to be called a disease, disorder, or constitutional vice." I think the evidence in the present case, while tending to show that the applicant had suffered from habitual cough or hoarseness, and from spitting or coughing of blood, and from shortness of breath, might fairly be viewed by the jury as insufficient to establish the existence of any disease or malady underlying these manifestations so serious as to have any bearing upon the general health of the applicant and the continuance of his life.

The alleged breach of warranty concerning the family record of the insured was based upon a statement that the health of his elder brother was good. A warranty of this kind means merely "that the individual inquired about has indicated in his action and appearance no symptoms or traces of disease, and to the observation of an ordinary friend or relative is in truth well." Grattan v. Metropolitan Life Ins. Co., 92 N. Y. 275, 280, 44 Am. Rep. 372. Thus construed, it is by no means clear that there was any breach in the case at bar of the warranty concerning the health of the applicant's brother. It is true that the mother of the insured gave testimony strongly tending to show that the brother was manifestly in poor health, and known so to be by the insured; but the mother admitted her bias against the plaintiff, and in view of that fact the jury were not bound to accept her statements as true. Rejecting her testimony, the evidence on this branch of the case was not such as to require a finding that this warranty had been broken.

The rulings in the exclusion and admission of evidence have been examined, without disclosing any error. The case appears to have been carefully and most fairly tried, and was submitted to the jury in a charge to which the defendant took no exception. The verdict was neither against the evidence nor against the weight of evidence, and it follows that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs. All concur.